**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

BAD BOY, INC.                                                                                              PLAINTIFF

v.                                            No. 1:08CV00050 JLH

BAD BOY ENTERPRISES, INC.                                                               DEFENDANT

## OPINION AND ORDER

Bad Boy, Inc. ("BBI") filed a complaint against Bad Boy Enterprises, Inc. ("BBE") on

September 12, 2008, seeking monetary damages and equitable relief for trademark infringement,

false designation of origin or description, tortious interference with prospective business relations,

violations of the Arkansas Deceptive Trade Practices Act, common law trademark infringement, and

unfair competition.  In its answer, BBE denied each count and raised several affirmative defenses.

BBE also filed a counterclaim in which BBE accused BBI of federal trademark infringement.  BBE

has filed a motion for summary judgment as to its counterclaim against BBI and the affirmative

defenses of laches, equitable estoppel, acquiescence, and the statute of limitations.  For the following

reasons, the defendant's motion for summary judgment is denied.

## I.

BBE is a Mississippi company that manufactures and sells electric-powered, two-wheel drive

and four-wheel drive all-terrain vehicles (hereinafter "ATVs").  From as early as 2003, BBE began

establishing itself as a leading developer and manufacturer of all-electric ATVs.  BBI is an Arkansas

corporation engaged in the manufacture and sale of gas-powered riding lawnmowers.  For over ten

years, BBI has used the trademark BAD BOY on its riding lawnmowers.  On August 16, 1999, BBI

filed an application with the United States Patent and Trademark Office ("USPTO") to register a graphic version of the mark BAD BOY for use in connection with its lawnmowers. By August 31, 1999, public notice of the application was available at the USPTO website. In August 2000, BBI's application was published for opposition in the Official Gazette of the USPTO. A third party filed an opposition proceeding against BBI's application, and as a result, the prosecution of BBI's application was suspended.

Meanwhile, in February 2003, BBE filed an application to register the mark BAD BOY as applied to land vehicles–namely electric-powered ATVs. On October 29, 2003, BBE received a notice from the USPTO that the mark "appears to be entitled to registration." The application was published for opposition on November 18, 2003, and was not officially opposed by BBI or any other person or entity. However, on January 27, 2005, before the period of opposition had expired, BBI's attorney Dennis Haase wrote a letter to BBE to place BBE on notice that BBI claimed trademark rights in the BAD BOY trademark for both lawnmowers and ATVs. Joseph Lemoine, BBE's attorney, responded to Haase in a letter dated February 3, 2005, informing Haase that BBE had applied for federal registrations of the BAD BOY and BAD BOY BUGGIES marks for use on ATVs, had been approved for registration following non-opposition, and believed there would be a likelihood of confusion if BBI were to start using the BAD BOY mark in connection with ATVs. Lemoine also offered to extend a license to BBI to use the BAD BOY mark on ATVs. Haase responded with a letter dated February 7, 2005, in which he agreed with BBE's assessment that there would be a likelihood of confusion if both parties used the trademark BAD BOY on ATVs. Haase also said, "With regard to your use of the mark on [ATVs], I suggest that you revisit the Doctrine of Natural Expansion."

On July 19, 2005, BBE was issued Registration No. 2,973,044, protecting the mark BAD BOY for use in connection with electric-powered ATVs.   BBE was issued Registration No. 3,278,592 on August 14, 2007, for the mark BAD BOY BUGGIES as applied to electric-powered ATVs.  Finally, on May 29, 2007, BBI was issued Registration No. 3,247,862, protecting the mark BAD BOY[1] for use in connection with riding mowers.

According to BBI, it believed the matter of using the trademark BAD BOY in connection with ATVs was resolved by the attorney letters in early 2005, and it "was surprised to learn that BBE was still using BBI's trademark BAD BOY on electric [ATVs] in 2007," particularly since BBI was planning to sell electric ATVs in the near future.  On February 26, 2007, BBI applied for the mark "BAD BOY MTV" as applied to ATVs.  The USPTO refused registration of the application under Trademark Act Section 2(d), 15 U.S.C. § 1052(d), because the mark, when used on ATVs, so resembled the mark in BBE's '044 registration as to cause confusion, to cause mistake, or to deceive. BBI responded to the USPTO's determination, attempting to distinguish the marks:

> With all due respect, the registration by Bad Boy Enterprises LLC [*i.e.*, movant BBE] relates to electric powered carts, whereas Applicant [*i.e.*, BBI] does not now, nor has it ever, made electric powered vehicles of any kind. . . . [T]here is no realistic likelihood of confusion as between [BBI] and [BBE] . . . .

Then, on February 22, 2008, Haase sent BBE a letter, which read in part:

> To date, [BBI] management has been remarkably tolerant of your activities under the name and style of BAD BOY BUGGIES.  As you are undoubtedly aware, [BBI] has had exclusive use of the name BAD BOY in connection with their vehicles for many years.  Moreover, they fought long and hard to register their mark over the strenuous opposition of [a third party]. . . .

> It has just come to our attention that your company is soliciting [BBI] distributors and retailers in an effort to get them to carry your product.  The purpose of this letter is

---

[1] BBI's mark includes a graphic of a cartoon bulldog between the words "BAD BOY."

to make you aware that [BBI] is on the threshold of introducing an ATV in various forms. Under the Doctrine of Natural Expansion, the vehicle will be introduced, promoted and sold under the name and style of BAD BOY.

Let me suggest that you carefully consider the potential consequences of your continuing to use BAD BOY BUGGIES in the face of the introduction of the [BBI] ATV, which will be sold in a variety of forms.

On March 13, 2008, the USPTO issued a final office action in which it rejected BBI's application.

BBI responded by filing this lawsuit, and on September 30, 2008, the USPTO issued a notice of

suspension in connection with the application pending resolution of this lawsuit.

Between 2005 and 2008, BBE made over $55 million in sales under its BAD BOY and BAD

BOY BUGGIES marks, compared to $3 million in sales in 2003-04. Between 2005 and 2008, BBE

invested approximately $3 million in advertising. BBI's total lawnmower sales since 1998 have

exceed $170 million, and its total advertising expenditures have exceeded $7 million.

## II.

A court should enter summary judgment if the evidence, viewed in the light most favorable

to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla*

*v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The party moving for summary

judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

If the moving party carries its burden, the nonmoving party must "come forward with 'specific facts

showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475

U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e))

4

(emphasis in original).  A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## III.

BBE seeks summary judgment on its federal trademark infringement counterclaim against BBI for use of the BAD BOY mark on ATVs.  The elements of federal trademark infringement are (1) proof of a protected interest in a trademark and (2) likelihood of confusion as to the identity or association between the plaintiff and defendant due to the common use of the trademark.  *See, e.g.*, *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (citing *Insty\*Bit, Inc. v. Poly-Tech Indus.*, 95 F.3d 663, 667 (8th Cir. 1996), *cert. denied*, 519 U.S. 1151, 117 S. Ct. 1085, 137 L. Ed. 2d 219 (1997); and *Dakota Indus. v. Ever Best Ltd.*, 944 F.2d 438, 440 (8th Cir. 1991)).

The parties agree that using BAD BOY marks on electric-powered ATVs marketed by the two separate companies would result in a likelihood of confusion.  The parties disagree, however, as to whether BBE has a protected interest in the BAD BOY mark for use on ATVs.  BBE alleges that it has a protected interest in the mark because it owns the '044 registration for BAD BOY and the '592 registration for BAD BOY BUGGIES, each as applied to ATVs.  BBI argues that this evidence is insufficient to prove ownership; rather, BBI contends that it is the senior user of the BAD BOY trademark for use on lawnmowers and is entitled to use that mark on related products such as ATVs.

5

Registration of a trademark is *prima facie* evidence of ownership and validity of the mark. 15 U.S.C. § 1057(b) ("A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence . . . of the registrant's ownership of the mark . . . ."). However, such evidence "shall not preclude another person from proving any legal or equitable defense. . . which might have been asserted if such mark had not been registered." *Id.* § 1115(a). A fundamental tenet of trademark law is that ownership of an inherently distinctive mark is governed by priority of use. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) (citing *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use.   To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.")); *see also Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 356 (6th Cir. 1998); *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842-43 (5th Cir. 1990); *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1023 (11th Cir. 1989); *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 217 (E.D.N.Y. 2007) (citing *Hawaii-Pacific Apparel Group, Inc. v. Cleveland Browns Football Co. LLC*, 418 F. Supp. 2d 501, 505-06 (S.D.N.Y. 2006)).   The first to appropriate and use a mark, or the senior user, has the exclusive right to use that mark or similar marks in connection with its business. *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 926 (8th Cir. 1967).

Not only does a senior user have the right to enjoin a junior user from using similar marks in the same industry, but the senior user can also enjoin a junior user from using the mark or confusingly similar marks in industries or markets within the senior user's "natural zone of

expansion." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1047.  The "natural zone of expansion" doctrine protects a senior user's interest in being able to enter a related field at some future time. *Rosenthal A.G. v. Ritelite, Ltd.*, 986 F. Supp. 133, 140 (E.D.N.Y. 1997) (quoting *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976)).  Generally, a senior user's natural zone of expansion is narrowly defined to prevent a senior user of a mark from monopolizing markets that neither its trade nor its reputation has reached.  *Tally-Ho, Inc.*, 889 F.2d at 1027-28.

To determine whether a noncompeting product is within the senior user's natural zone of expansion, courts look to consumer perception: if consumers believe that the natural tendency of producers of the type of goods marketed by the senior user is to expand into the market for the type of goods marketed by the junior user, then the junior user's product is within the senior user's natural zone of expansion.  *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 666 (5th Cir. 2000); *see also Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 202 (5th Cir. 1998) (finding that because Elvis Presley Enterprises licenses so many products and is a strong presence in the entertainment business, the restaurant and bar business would be a natural area of expansion).  In other words, the question is whether customers are likely to believe that the product being marketed by the junior user belongs to the senior user.  *See Scarves by Vera, Inc.*, 544 F.2d at 1173 ("Absent equities in the junior user's favor, he should be enjoined from using a similar trademark whenever the non-competitive products are sufficiently related that customer's are likely to confuse the source of origin.").  "The extent of the zone is generally considered as of the date of the junior user's first use." *Tally-Ho, Inc.*, 889 F.2d at 1028.

The evidence shows that BBI began selling its lawnmowers under the BAD BOY mark prior to the time BBE began to sell BAD BOY ATVs.  Thus, BBI was the senior user and owner of the

BAD BOY mark for use in the lawnmower industry.  Whether the use of the BAD BOY mark in the sale of electric-powered ATVs was within BBI's natural zone of expansion, thus making BBI the owner of the mark, depends on whether the consuming public would likely believe that BBE's ATVs were produced by BBI at the time the ATVs went on the market.  BBI argues that consumers were likely to be confused because ATVs and riding lawnmowers are commonly found for sale at the same retail outlet and often are manufactured by the same company.  BBI also points out that many of its customers have requested that BBI manufacture ATVs.  BBE contends that consumers were not likely to be confused about the origin of the BAD BOY ATVs when they first were marketed and sold in 2003.  BBE points out that the USTPO did not find that consumer confusion would arise when it registered separate BAD BOY marks for lawnmowers and ATVs.  In light of this dispute, this Court find a genuine issue of material fact as to whether consumers were likely to believe in 2003 that BBE's ATVs with the marks BAD BOY and BAD BOY BUGGIES belonged to BBI.

## IV.

BBI also seeks summary judgment on its affirmative defenses of laches, equitable estoppel, and acquiescence.  "Laches applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted."  *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999).  In trademark suits, "courts tend to reject a defendant's assertion of the laches defense when the defendant knew that the plaintiff objected to the use of the mark."  *Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 859 (8th Cir. 2009); *see also Elvis Presley Enters., Inc.*, 141 F.3d at 205 ("Any acts after receiving a cease and desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts."); *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1546-47 (11th Cir. 1984) (denying

laches defense where plaintiff notified defendants of potential infringement before defendant acquired mark).

The defense of equitable estoppel requires the defendant to show that the plaintiff led the defendant to believe that the plaintiff did not intend to enforce its rights.  *Hiland Potato Chip Co. v. Culbro Snack Foods, Inc.*, 720 F.2d 981, 984 (8th Cir. 1983).  Similarly, an acquiescence defense requires a showing that the plaintiff actively represented that it would not assert a right or a claim. *Coach House Rest., Inc. v. Coach and Six Rests., Inc.*, 934 F.2d 1551, 1563-64 (11th Cir. 1991).

Haase's January 2005 letter placed BBE on notice that BBI claimed trademark rights in the BAD BOY trademark.  BBE contends, however, that Haase's February 2005 letter expressed that BBI no longer objected to BBE's use of the BAD BOY mark for ATVs and led BBE to believe that BBI would not enforce its rights against BBE.[2]  BBI argues that the February letter was consistent with its January 27, 2005, letter and was meant to alert BBE to BBI's rights under the doctrine of natural expansion.  The fact finder must determine what message was conveyed by the letters between BBE and BBI.  Given this genuine issue of material fact, BBE is not entitled to summary judgment on its affirmative defenses of laches, equitable estoppel, or acquiescence.

## V.

Finally, BBE seeks summary judgment on the statute of limitations defense that it raises in response to BBI's claims of intentional interference with business relations (Count 5) and common law trademark infringement and unfair competition (Count 6).  The parties disagree as to the applicable limitations period.  BBE argues for a three-year limitations period that applies to "[a]ll

---

[2] In the February 2005 letter, Haase wrote, "Regarding your suggestion of a likelihood of confusion, I concur in your preliminary analysis.  With regard to your use of the mark on [ATVs], I suggest that you revisit the Doctrine of Natural Expansion."

actions for taking or injuring any goods or chattels." ARK. CODE ANN. § 16-56-105.  BBI alleges

that the five-year, catch-all statute of limitations is applicable.  *See* ARK. CODE ANN. § 16-56-115.

Regardless of which limitations period applies, the statute of limitations is not a complete

defense to actions arising from trademark infringement because infringement is a continuing wrong.

*See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999) (determining that without

the availability of the laches defense to a claim arising from a continuing wrong, a party could delay

filing suit indefinitely without violating the statute of limitations); *Gaudreau v. Am. Promotional

Events, Inc.*, 511 F. Supp. 2d 152, 156 (D.D.C. 2007) (finding state law based infringement claims

were not bared by statute of limitations because plaintiff alleged continuing acts of infringement);

*Novell, Inc. v. Unicom Sales, Inc.*, No. C-03-2785, 2004 WL 1839117, at *4 (N.D. Cal. Aug. 17,

2004) (applying the Ninth Circuit's rule that "infringement is a continuing wrong, and the statute of

limitations is no bar except as to damages beyond the statutory period"); 6 J. THOMAS MCCARTHY,

MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 31:33 (4th ed. 2009) ("[I]nfringement is

a continuing wrong, and the statute of limitations is no bar except as to damages beyond the statutory

period . . . .").  Under the notion of a continuing wrong, "only the last infringing act need be within

the statutory period" to bar a statute of limitations defense.  *Hot Wax, Inc.*, 191 F.3d at 821 (quoting

*Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983)).  Thus, even if BBI makes claims for

damages that were incurred outside the limitations period and such claims are  time-barred, the

statute of limitations does not preclude BBI from asserting claims for damages that were incurred

within the limitations period.  *See Novell, Inc.*, 2004 WL 1839117, at *4; *Sonoma Foods, Inc. v.

Sonoma Cheese Factory, LLC*, No. C 07-00554, 2008 WL 913279, at *2 (N.D. Cal. Apr. 3, 2008)

(denying defendant's motion for partial summary judgment for identical reasons).  BBE offers no

10

evidence that BBI's claims for common law trademark infringement and unfair competition arise solely from acts that occurred outside of the statutory period.   As a result, BBE's motion for summary judgment is denied.

**CONCLUSION**

For the reasons stated above, the defendant's motion for summary judgment is DENIED. Document # 17.

IT IS SO ORDERED this 24th day of November, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE